1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | FABIAN CABALLERO MARTINEZ, on behalf of himself and all others similarly situated, | ) ) ) | Case No.: 1:19-cv-01581 JLT CDB |
| 12 | | ) ) | ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT |
| 13 | Plaintiff, | ) ) | |
| 14 | v. | ) ) | (Doc. 47) |
| 15 | SEMI-TROPIC COOPERATIVE GIN & ALMOND HULLER, INC. and DOES 1 through 20, inclusive, | ) ) ) | |
| 16 | | ) ) | |
| 17 | Defendants. | ) ) | |
| 18 | | ) | |

19          Fabian Caballero Martinez asserts Semi-Tropic Cooperative Gin & Almond Huller failed to

20   comply with California's wage and hour laws by failing to pay all wages due and provide proper meal

21   and rest breaks.  Plaintiff now seeks preliminary approval of a class settlement reached in this action.

22   Specifically, Plaintiff seeks: (1) conditional certification of the settlement class; (2) preliminary

23   approval of the settlement; (3) appointment of Plaintiff as the class representative; (4) appointment of

24   the firm of Mallison & Martinez as class counsel; (5) approval of the class notice; (6) appointment of

25   Simpluris, Inc., as the settlement administrator; and (7) scheduling for final approval.  (Doc. 47-1.)

26          The Court reviewed the proposed settlement between the parties and proposed class notice, as

27   well as the moving papers.  For the following reasons, Plaintiff's motion for preliminary approval of

28   the class settlement is **GRANTED**.

1

1

## BACKGROUND

2       Plaintiff reports he performed "janitorial work and moving and sorting loads of almonds for

3   shipment" for Defendant, and was classified as a non-exempt employee.  (Doc. 16 at 4, ¶ 11.)  Plaintiff

4   asserts "Defendant's business runs twenty-four… hours a day processing almonds," and the nature of

5   the job required someone always be present to monitor the machines."  (*Id.* at 7, ¶ 27.)  He explains:

6   "If the machines are left unattended while operating, trash and debris can damage the machines that

7   process the almonds."  (*Id.*)  According to Plaintiff, "[f]or that reason, employees were required to

8   show up early for their shifts to ensure that someone is always present to monitor the machines during

9   shift changes."  (*Id.*)  Plaintiff contends his supervisor "also required that Plaintiff be at work early so

10  that he can immediately replace the other employee."  (*Id.*)

11      Plaintiff reports he "typically worked from Monday through Saturday," and was scheduled to

12  work a twelve-hour shift from 6PM to 6AM.  (Doc. 16 at 7, ¶ 28.)  However, Plaintiff alleges he "had

13  to clock in early and clock out late."  (*Id.*)  As a result, Plaintiff reports he arrived at work five to ten

14  minutes before he was scheduled, and "[t]his time was never compensated."  (*Id.*)  In addition, he

15  asserts he "had to occasionally remain at work up to 20 minutes after his shift had ended to allow his

16  replacement to relieve him," and without compensation.  (*Id.*)  In addition, Plaintiff contends he "is

17  aware that other employees were required to do the same.  (*Id.*)  According to Plaintiff, his "wage

18  statements reveal that he was paid for seventy-two … hours of work nearly every pay period, which

19  suggests that Defendant was improperly rounding Plaintiff's time worked."  (*Id.* at 7-8, ¶ 28.)  He

20  asserts that "[o]n at least one occasion," Defendant required Plaintiff to work seven days in a row, and

21  Plaintiff "was not compensated at double his wage after the eighth hour of work."  (*Id.* at 8, ¶ 28.)

22      Plaintiff alleges Defendant failed to provide uninterrupted meal periods and rest periods, "or

23  pay a premium wage in lieu thereof."  (Doc. 16 at 8, ¶¶ 29-30.)  He contends he "did not receive his

24  first meal period until 1 AM, more than seven … hours into his shift."  (*Id.*, ¶ 29.)  Plaintiff assert also

25  that he "never received a second lunch period or signed a meal period waiver."  (*Id.*)  Plaintiff alleges

26  "he was often interrupted and asked to perform work duties" during his rest and meal periods.  (*Id.*, ¶¶

27  29-30.)  For example, Plaintiff asserts: "Supervisors and other employees would come into the break

28  room and tell Plaintiff to work on a task that needed attention."  (*Id.*, ¶ 30.)  Plaintiff contends these rest

1    and meal period practices "occurred every shift," and he "was never compensated with premium

2    wages." (*Id.*, ¶¶ 29-30.)

3        According to Plaintiff, "Defendant also failed to provide Class members, including Plaintiff,

4    with accurate itemized wage statements." (Doc. 16 at 8, ¶ 31.)  He asserts the wage statement did not

5    "reflect[] all hours worked by Plaintiff" because he "was required to work before and after his shift had

6    ended," and this time was not reflected on the wage statements. (*Id.*)  Plaintiff contends Defendant

7    "fail[ed] to itemize in wage statements all wages earned and accounting for the applicable rate of pay

8    for Plaintiff and the members of the proposed class." (*Id.* at 9, ¶ 34.)

9        Finally, Plaintiff asserts that upon his termination, Defendant "failed to compensate Plaintiff for

10   all hours worked." (Doc. 16 at 8, ¶ 32.)  He contends Defendant did not pay statutory penalties to class

11   members, including Plaintiff.  (*Id.*)  Plaintiff alleges Defendant "made it difficult to account with

12   precision for the unlawfully withheld wages due to Plaintiff and the Class … because Defendant did not

13   fully implement and preserve a record keeping method to accurately record all hours worked and wages

14   earned by its employees as required for non-exempt employees." (*Id.* at 9, ¶ 35.)

15       On November 5, 2019, Plaintiff initiated this action by filing a complaint.  (Doc. 1.)  He filed a

16   First Amended Complaint on January 30, 2020.  (Doc. 16.)  Plaintiff identified the following causes of

17   action: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act; (2) failure to pay

18   minimum wages; (3) failure to pay overtime wages under California law; (4) failure to furnish itemized

19   wage statements; (5) meal period violations; (6) rest period violations; (7) failure to pay wages due

20   upon termination or resignation; (8) violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; and (9) civil

21   penalties pursuant to California's Private Attorney General Act.  (Doc. 16 at 12-26.)  He asserted the

22   claims were brought on behalf of himself and a class including: "All persons employed by Defendant

23   … in the State of California at any time within four [] years of the filing of the Initial Complaint in this

24   action." (*Id.* at 9, ¶ 39.)  Defendant filed its First Amended Answer on March 5, 2020.  (Doc. 21.)

25        The Court issued its Scheduling Order governing the action on April 14, 2020.  (Doc. 24.)

26   The parties engaged in discovery, including the production of "payroll and timekeeping records for the

27   Class." (Doc. 47-1 at 8.)  Plaintiff's counsel also hired an expert "to perform an extensive review and

28   analysis of these records and assembled a comprehensive damages model." (Doc. 42-2 at 10.)

1       The parties participated in a mediation with Steven M. Vartabedian on June 1, 2021.  (Doc. 47-1

2  at 8.)  Plaintiff reports that "[a]s a result of mediation, the parties reached an agreement in principal to

3  settle this matter, which they memorialized in a Memorandum of Understanding."  (*Id.*)  The parties

4  then entered into the "Settlement Agreement and Release," which the parties and counsel executed

5  between January and March 2022.  (Doc. 42-3 at 2-26.)  Because the initial agreement referred to

6  certification of the Settlement Class under state law, the parties executed the "Amended Settlement

7  Agreement and Release" in June 2022, "to conform with the applicable federal class certification

8  requirements laid out in Rule 23."  (*See* Doc. 45 at 2; *see also* Doc. 47-3.)  Plaintiff now seeks approval

9  of the settlement.  (Doc. 47.)  Defendant did not oppose or otherwise respond to the motion.[1]

10                  **THE PROPOSED SETTLEMENT**

11       Pursuant to the proposed Settlement Agreement and Release ("the Settlement"), the parties

12  agree to a gross settlement amount of $600,000.00 for the class defined as follows: "any individual who

13  worked for Semi-Tropic in the State of California as an hourly paid, non-exempt employee at any time

14  between November 5, 2015 and June 3, 2021."  (Doc. 47-3 at 2-4, Settlement §§ I.F, I.S.)  In addition,

15  the Settlement includes an "Escalator Clause," under which the gross settlement amount will be

16  increased, pro rata, if the number of Class Members increases by more than 10% of the 155 members

17  estimated at the time of execution.  (Doc. 47-3 at 9, Settlement § III.A.4.)  Defendant agrees to pay

18  funds necessary to make the payments approved by the Court, including any share of employer-side

19  payroll taxes, after final approval of the Settlement.[2]  (*Id.* at 8, Settlement § III.A.)

20  **I.      Payment Terms**

21       The settlement fund will cover payments to class members with additional compensation to the

22  Plaintiff as the Class Representative.  (Doc. 42-3 at 9, Settlement § III.B.)  In addition, the Settlement

23  provides for payments to Class Counsel for attorneys' fees and costs, to the Settlement Administrator,

24  and the California Labor & Workforce Development Agency.  (*Id.*)  Specifically, the Settlement

25

26  [1] As part of the agreement, Defendant indicated it would "not oppose [the] Motion for Preliminary Approval, so long as the

27  Motion and supporting papers are consistent with the terms of [the] Settlement Agreement."  (Doc. 47-3 at 13, Settlement § III.E.1.a.iv.)

    [2] Defendant agrees to pay the amount within ten days of the "Effective Date," which is seven days after the completion of

28  several conditions and events, including "entry of a written final order by the Court approving [the] Settlement Agreement

    and entering final Judgement."  (Doc. 42-3 at 3, Settlement § I.P.)

provides for the following payments from the gross settlement amount:

- The Class Representative will receive an incentive award up to $10,000;

- Class counsel will receive up to $200,000 for attorneys' fees, which equals 33 1/3 % of the gross settlement amount, and costs in an amount to be determined by the Court[3];

- The California Labor and Workforce Development Agency shall receive $37,000 from the total PAGA payment of $50,000; and

- The Settlement Administrator will receive up to $5,000 for fees and expenses.

(*Id.* at 9-11, Settlement § III.B.)  After these payments, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to class members.  (*Id.* at 5, Settlement § I.V.)  If the Court approves less than the amount requested for attorney's fees, costs, or payment to the LWDA, "the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members."  (*Id.* at 47-3 at 10-11, Settlement §§ III.B.2, III.B.3.)

Class members are not required to submit a claim to receive a share from the Net Settlement Amount.  (*See* Doc. 47-3 at 11-12, Settlement § III.D; *see also* Doc. 47-4 at 5.)  Class members' shares will be distributed on a pro rata basis, with shares "calculated by dividing the Net Settlement Amount by the total number of workweeks worked by each Class Member from November 5, 2015 to June 3, 2021."  (Doc. 47-1 at 9, citing Settlement § III.D.1 [Doc. 42-3 at 11].)  In addition, "the amount allocated to the release of the PAGA claims that will be returned to the Net Settlement Amount… will only be distributed among those Class Members/ Allegedly Aggrieved Employees employed between June 25, 2018 and June 3, 2021."  (*Id.* at 10.)  Thus, the exact amount settlement class members receives depends upon how many weeks they worked for Defendant, and whether they are entitled to a portion allocated for the release of PAGA claims.  However, Plaintiff reports that if the Court were to approve of the proposed payments—including the maximum attorney fees and class representative enhancement award under the Settlement—the average payment is estimated to be about $2,157 for each of the 156 class members.  (*Id.*)

---

[3] In the motion for preliminary approval, Plaintiff's counsel reports the litigation expenses are "estimated not to exceed $11,000."  (Doc. 47-1 at 9.)

The entire Net Settlement Amount will be distributed, and if any checks are not cashed or returned, that money will not be returned to Defendant.  (Doc. 47-3 at 12, Settlement § III.D.5.) Instead, the money will be distributed to a *cy pres* beneficiary.  (*Id.* at 19, Settlement § III.E.5.)

**II.     Releases**

The Settlement provides that Plaintiff and class members, other than those who elect not to participate in the Settlement, shall release Semi-Tropic[4] from claims arising in the class period. Specifically, the release for class members provides:

> Upon the Effective Date, each and every Participating Class Member, on behalf him/herself and on behalf of his/her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully and finally releases and discharges Semi-Tropic and the Released Parties from all of the Released Claims, as defined in this Settlement Agreement.

(Doc. 47-3 at 20, Settlement § III.G.1, emphasis omitted.)  "Released Claims" are defined as:

> [A]ll claims asserted in the Lawsuit and any and all claims, suits, actions, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney's fees, damages, debts, losses, controversies, setoffs, counterclaims, or causes of action of any kind or nature or description whatsoever in law, equity, statutory or otherwise, whether known or unknown, contingent or accrued, including, but not limited to, any claim which was asserted or could have been asserted at common law or under any statute, rule, regulation, order or law, whether federal, state or local, arising from, or related to, the facts, claims, and/or circumstances alleged in the Lawsuit or Plaintiff's PAGA notice letter, or which were alleged or which could have been alleged against the Released Parties based on the facts or claims alleged in the Lawsuit or Plaintiff's PAGA notice letter, including, but not limited to, for or regarding the payment of wages; unpaid wages; unpaid minimum wages; unpaid overtime compensation; interest or penalties for unpaid wages, unpaid minimum wages, or unpaid overtime compensation; off-the-clock work; failure to timely pay wages owed; failure to provide meal periods or to pay premium pay in lieu thereof; failure to provide rest breaks or to pay premium pay in lieu thereof; failure to provide and maintain accurate and itemized wage statements; inaccurate, incomplete or incorrect pay instruments/stubs and/or wage or earnings statements; inaccurate payroll or time record-keeping records; failure to reimburse business expenses; waiting time penalties; damages; premium pay; breach of contract or company policy; statutory penalties; civil penalties; injunctive relief; declaratory relief; restitution; interest; costs and attorneys' fees; enforcement of the California Labor Code Private Attorney General Act of 2004, Labor Code §§ 2698, et seq.; fraudulent business practices or unfair competition under the California Business and Professions Code §§ 17200, et seq.; and any other claims or damages arising out of or relating to Plaintiff's and/ or any

---

[4] The Settlement also indicates the release encompasses Defendant's "present and former parent companies, subsidiaries, affiliated corporations and entities, and all of their agents, shareholders, officers, directors, members, managers, employees, representatives, insurers, successors, attorneys, fiduciaries, and assigns."  (Doc. 42-3 at 6, Settlement § I.CC.)

> Class Members' employment with Semi-Tropic during the period of time from November 5, 2015 to the date of Preliminary Approval of the Settlement, whether known or unknown.

(Doc. 42-3 at 5-6, Settlement § I.BB, emphasis omitted.)

The release for Plaintiff encompasses more claims than those identified for Settlement Class Members, because he agreed to release any claims that could have arisen during the course of his employment with Semi-Tropic, not just those claims constrained to the facts alleged in this lawsuit. Specifically, Plaintiff's release provides:

> As of the Effective Date, and in consideration of his Settlement Share, and the other terms and conditions of the Settlement Agreement, Plaintiff, on behalf of himself and his current, former and future heirs, executors, administrators, executors, spouses, agents, and attorneys, hereby fully and finally releases and discharges Semi- Tropic and the Released Parties from all of the Released Claims and any and all claims, rights, demands, liabilities, obligations, penalties, costs, expenses, attorneys' fees, rights, damages, suits, indemnities, controversies, setoffs, debts, losses, counterclaims, guarantees, actions and causes of action of any kind, nature or description whatsoever in law, equity statutory, administrative, or otherwise, or any other monetary or non-monetary relief, that any of them had, now have, or may have in the future, including, but not limited to, any arising in any way from Plaintiff's employment with Semi-Tropic or the cessation thereof, whether such claims are known or unknown, suspected or unsuspected, arising on or before the Effective Date of this Agreement (unless a release of claims is excluded by law).

(Doc. 47-3 at 20, Settlement § III.G.3, emphasis omitted.)  Thus, claims released by Plaintiff—but not the Settlement Class—include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Employee Retirement Income Security Act. Indeed, the Settlement indicates: "Plaintiff intends that this Agreement be, and is, a general release that shall be affective as a bar to any and all claims against the Released Parties." (*Id.* at 21, § III.G.4.)

## III.    Objections and Opt-Out Procedure

The proposed "Notice of Class Action Settlement and Your Rights" (the "Notice") explains to class members they do not need to "take any action" to receive a settlement share. (Doc. 47-4 at 5.) However, any class member who wishes may file objections or elect not to participate in the Settlement. (Doc. 47-3 at 15-16, Settlement § III.E.)  The Notice also explains the procedures to object to the terms or elect not to participate in the Settlement Class, and includes a form to be completed by a class member seeking exclusion. (Doc. 47-4 at 5-6, 8-9.)

**IV.     Cy Pres Beneficiary**

Since many class action settlements result in unclaimed funds, parties should have a plan for distributing unclaimed funds. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). The options for such distribution include cy pres distribution, escheat to the government, and reversion to the defendants. *Id.*, 904 F.2d at 1307.  Here, the parties agree that a cy pres beneficiary should be designated for uncashed or returned funds under the Settlement, and indicate the recipient should be "Legal Aid at Work or some similar organization as approved by the Court." (Doc. 47-3 at 19, Settlement § III.E.5.)

The Ninth Circuit determined a proposed cy pres recipient should be "tethered to the nature of the lawsuit and the interest of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011).  In other words, the Ninth Circuit "require[s] that there be a driving nexus between the plaintiff class and the cy pres beneficiaries." *Dennis v. Kellogg Co*., 697 F.3d 858, 865 (9th Cir. 2012) (citing *Nachshin*, 663 F.3d at 1038.  The Court explained that without such tethering, the distribution of funds "may create the appearance of impropriety" by catering "to the whims and self interests of the parties, their counsel, or the court." *Nachshin*, 663 F.3d at 1038.  Thus, a cy pres award should not benefit a group that is "too remote from the plaintiff class." *Six Mexican Workers*, 904 F.2d at 1308.

In identifying a cy pres beneficiary, the Ninth Circuit directs courts to consider whether awards to the beneficiary "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." *Nachshin*, 663 F.3d at 1040. Further, the Court must consider whether the cy pres distribution is appropriate given the "size and geographic diversity" of the class members.  *Id.* at 1040-41 (citing, e.g., *In re Airline Ticket Comm'n Antitrust Litig*., 307 F.3d 679, 683 (8th Cir. 2002); *Houck on Behalf of U.S. v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th Cir. 1989)).  Plaintiff has not provided any analysis of these factors to assist the Court in evaluating whether Legal Aid at Work is an appropriate cy pres beneficiary.[5]

---

[5] Mr. Mallison reports only that "Legal Aid at Work is a 501(c)(3) non-profit organization which assists indigent workers with employment law claims."  (Doc. 47-2 at 12, ¶ 27.)  However, there is no evidence before the Court that class members are "indigent" and qualify for the assistance of Legal Aid at Work.  Similarly, there is no information provided regarding the location of the organization, such that the Court may determine any member of the class lives in the same community and could benefit from its assistance. *See Nachshin*, 663 F.3d at 1040 (giving significant weight to the geographic scope of the settlement class). Indeed, a cursory review demonstrates that in many cases in which Mr. Mallison or Mr. Martinez were counsel of record, class counsel recommended the cy pres beneficiary be a pro bono law firm. *Rosales v. El Rancho Farms,*

8

Nevertheless, the Ninth Circuit observed also that issues related to the identity of a cy pres beneficiary are not generally ripe until there are funds that remain unclaimed.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding cy pres distribution "becomes ripe only if entire settlement fund is not distributed to class members" and declining to determine propriety of cy pres at that time).  The Court explained that where a cy pres distribution is contingent on the outcome of the claims process for a cash distribution, issues regarding the identification of recipients "will not be ripe until it is determined that available cash remains in th[e] fund after the claims process has concluded."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).  Clearly, at this point in the proceedings, there is no way to know whether funds will remain.  Accordingly, the identity of the cy pres beneficiary does not prevent preliminary approval of the proposed settlement.

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

## I.      Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P. 23(a).  The proposed Settlement Class includes: "any individual who worked

---

2015 WL 4460635, at *9 (E.D. Cal. July 21, 2015), report and recommendation adopted, No. 1:09-CV-00707AW IJLT, 2015 WL 13659310 (E.D. Cal. Oct. 2, 2015); *Ontiveros v. Zamora*, 2014 WL 3057506, at *1 (E.D. Cal. July 7, 2014), Doc. 123-3 at 8-10; *Sandoval Ortega v. Aho Enterprises, Inc.*, 2021 WL 5584761, at *13 (N.D. Cal. Nov. 30, 2021); *Sandoval v. M1 Auto Collisions Centers*, 2017 WL 11679905, at *5 (N.D. Cal. Mar. 20, 2017). This suggests that pro bono law firms represent the interests of counsel, rather than the class. Moreover, both Mr. Mallison and Mr. Martinez worked for CRLA, which was the recipient of the cy pes funds in many o the cases cited here. **Thus, in keeping with the growing numbers of courts who strongly question the wisdom of cy pres beneficiaries, the Court finds, preliminarily, that the proposed cy pres beneficiary is not appropriate.** Plaintiff **SHALL** clearly address the factors identified by the Ninth Circuit in *Nachshin* in seeking final approval of the Settlement.

for Semi-Tropic in the State of California as an hourly paid, non-exempt employee at any time between November 5, 2015 and June 3, 2021." (Doc. 47-3 at 2, Settlement § I.F.)  Plaintiff seeks conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23(c)(1), under which a court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." (Doc. 47-1 at 20, quoting *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000).)

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate … compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A.     Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

### 1.     Numerosity

This prerequisite requires the Court to consider "specific facts of each case and imposes no absolute limitations."  *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is not a specific threshold, joining more than one hundred plaintiffs is impracticable.  *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (finding the numerosity requirement … "satisfied solely on the basis of the number of ascertained class members"); *see also Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th

Cir. 1977) (a proposed class with 110 members "clearly [included] a sufficient number to meet the numerosity requirements"). Plaintiff reports there are "approximately 156 similarly situated Class Members." (Doc. 47-1 at 21, citing Mallison Decl. ¶ 22 [Doc. 47-2 at 11].) Therefore, joinder of all identified class members as plaintiffs is impracticable, and the numerosity requirement is satisfied.

### 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the plaintiff must demonstrate common points of facts and law. *See Wal-Mart Stores*, 564 U.S. at 350. Thus, "commonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks, citations omitted).

Plaintiff asserts the commonality requirement is satisfied because "common questions of both law and fact … exist regarding Defendant's alleged violations, including requiring Class Members to work off-the-clock and its practice of time rounding." (Doc. 47-1 at 21.) Plaintiff contends "these policies and practices were committed against the Class uniformly." (*Id.*) Because it appears resolution of issues—such whether Defendant's policies violated California wage and hour law—would apply to the claims of each of the Class Members, the Court finds the commonality requirement is satisfied for purposes of settlement.

### 3. Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks, citation omitted); *see also Kayes v. Pac. Lumber*

*Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiff asserts he performed "janitorial work and moving and sorting loads of almonds for shipment" for Defendant, and was classified as a non-exempt employee. (Doc. 16 at 4, ¶ 11.) He reports that "employees were required to show up early for their shifts to ensure that someone is always present to monitor the machines during shift changes." (*Id.* at 7, ¶ 27.) Plaintiff asserts he also remained at work "up to 20 minutes after his shift ended to allow his replacement to relieve him," and he was "aware that other employees were required to do the same. (*Id.*, ¶ 28.) He alleges Defendant improperly rounded the time worked, and did not provide compensation for this time. (*Id.*) Plaintiff also contends Defendant "failed to provide Class members, including Plaintiff, with accurate itemized wage statements," because the time employees were required to be present before and after scheduled shifts was not reflected in the wage statements. (*Id.* at 8, ¶ 31.)

According to Plaintiff, his "claims are essentially identical to all other non-exempt workers in Defendant's almond hulling plant." (Doc. 47-1 at 21.) Because Plaintiff was subjected to the same company policies and payment procedures as Settlement Class Members—and Defendant does not dispute this— the Court finds the typicality requirement is satisfied for purposes of settlement. *See Hanon*, 976 F.2d at 508; *Kayes*, 51 F.3d at 1463.

### 4.   Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a.   *Proposed class representative*

Plaintiff seeks appointment as the class representative for the Settlement Class. (*See* Doc. 47-1 at 21-22.) Mr. Mallison reports Plaintiff "carried out all required tasks in this case to help [counsel]

1   pursue this action, providing [counsel] with information, documents, insights, opinions, and necessary

2   decisions to make this case successful."  (Doc. 47-2 at 9, Mallison Decl. ¶ 16.)  Moreover, the interests

3   of the named plaintiff are aligned with those of the class members: to maximize their recovery.  Thus,

4   for settlement purposes only, the Court also finds Plaintiff is a suitable class representative.

5                                   *b.   Proposed class counsel*

6        The law firm of Mallison & Martinez has extensive experience litigating wage and hour class

7   actions and serving as class counsel.  (*See* Doc. 42-2 at 2-8, Mallison Decl. ¶¶ 4, 7-14.)  Mr. Mallison

8   asserts: "Neither I, nor any member of the firm, have any personal affiliation or family relationship

9   with the Plaintiff.  The only relationship with Plaintiff in this current litigation is an attorney-client

10  relationship."  (*Id.* at 9, ¶ 16.)  Defendant does not oppose appointment of the proposed Class Counsel,

11  or assert they are inadequate to represent the interest of the class.  After reviewing the qualifications of

12  Mallison & Martinez, the Court finds counsel satisfy the adequacy requirements.

13      **B.   Certification of a Class under Rule 23(b)(3)**

14      As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified

15  if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266.

16  Plaintiff asserts certification of the settlement class is appropriate under Rule 23(b)(3), which requires a

17  finding that (1) "the questions of law or fact common to class members predominate over any questions

18  affecting only individual members," and (2) "a class action is superior to other available methods for

19  fairly and efficiently adjudicating the controversy."  These two requirements are generally called the

20  "predominance" and "superiority" requirements.  *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart*

21  *Stores*, 564 U.S. at 363 ("(b)(3) requires the judge to make findings about predominance and

22  superiority before allowing the class").

23       Plaintiff asserts "the parties agree for purposes of the Settlement only that certification of the

24  Class is appropriate under Rule 23(b)(3)" and agree the predominance and superiority requirements are

25  satisfied.  (Doc. 47-1 at 22.)  Indeed, it appears Plaintiff's class claims are subject to proof by common

26  evidence related to the alleged policies and practices.  There is no evidence—particularly at this

27  juncture— that class members desire to individually litigate the claims.  Further, there are no identified

28  issues of manageability that would preclude certification.  Consequently, the Court finds conditional

13

1   certification of the proposed Settlement Class is proper under Rule 23(b)(3).

2   **II.      Evaluation of the Settlement Terms**

3          Settlement of a class action requires approval of the Court, which may be granted "only after a

4   hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

5   Approval is required to ensure settlement is consistent with the plaintiff's fiduciary obligations to the

6   class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). Toward that end,

7   "Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in

8   determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d

9   1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P. 23(e)(2) (effective Dec. 1, 2018). Rule 23(e)(2) now

10  directs the Court to consider whether:

11          (A) the class representatives and class counsel have adequately represented
                the class;
12          (B) the proposal was negotiated at arm's length;
            (C) the relief provided for the class is adequate, taking into account:
13                  (i) the costs, risks, and delay of trial and appeal;
                    (ii) the effectiveness of any proposed method of distributing relief to
14                  the class, including the method of processing class-member claims;
                    (iii) the terms of any proposed award of attorney's fees, including
15                  timing of payment; and
                    (iv) any agreement required to be identified under Rule 23(e)(3); and
16          (D) the proposal treats class members equitably relative to each other.

17  Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24. The Ninth Circuit determined this

18  revision to Rule 23 requires courts "to go beyond [its] precedent." *Briseño*, 998 F.3d at 1026.[6]

19          **A.      Representation of the Class**

20          To determine adequacy of representation under Rule 23(e)(2), the Court may consider whether

21  the interests of the named plaintiff are "aligned with the interests of the Class Members." *See Cottle v.*

22

23  _____

24  [6] Previously, the Ninth Circuit had identified several factors to determine whether a settlement agreement meets these
    standards, including:
25          the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further
            litigation; the risk of maintaining class action status throughout the trial; the amount offered in
            settlement; the extent of discovery completed, and the stage of the proceedings; the
26          experience and views of counsel; the presence of a governmental participant; and the reaction
            of the class members to the proposed settlement.
27  *Staton*, 327 F.3d at 959 (citation omitted). Although Plaintiff refers to the factors under the Ninth Circuit precedent (Doc.
    75 at 22-23), the Court focuses its analysis on the factors enumerated in Rule 23. *See Briseño*, 998 F.3d at 1026; *see also*
28  *Herrera v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 170195, at *21 (C.D. Cal. June 8, 2021) ("The goal of
    [amended Rule 23(e)] is … to focus the [district] court and the lawyers on the core concerns of procedure and substance
    that should guide the decision whether to approve the proposal") (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory
    Committee Notes).

1    *Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021). In addition, a finding that "Class Counsel are

2  experienced and competent" supports a conclusion that the class is adequately represented.  *Id.; see*

3  *also In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent

4  counsel are better positioned than courts to produce a settlement that fairly reflects each party's

5  expected outcome in litigation.").  Thus, the adequacy analysis under Rule 23(e)(2) is "redundant of

6  the requirements of Rule 23(a)(4) and Rule 23(g), respectively."  *Moreno v. Beacon Roofing Supply,*

7  *Inc.*, 2020 WL 1139672 *at 5 (S.D. Cal. Mar. 9, 2020).

8       Plaintiff's interests appear aligned with those of class members, as they share a common

9  interest in challenging the alleged wrongful wage and hour policies.  In addition, Class Counsel are

10  clearly experienced in class action litigation.  (*See* Doc. 42-2 at 2-8, Mallison Decl. ¶¶ 4, 7-9.)

11  Because Plaintiff carried the burden to show the adequacy prerequisite was satisfied under Rule 23(a),

12  the Court finds the requirement under Rule 23(e)(2) is also satisfied.  *See Moreno*, 2020 WL 1139672

13  *at 5 ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to

14  the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

15      **B.**    **Negotiation of the Settlement**

16       Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's length."

17  Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit also "put[s] a good deal of stock in the product of an

18  arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement.

19  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  The inquiry of collusion addresses

20  the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators"

21  or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  The Ninth

22  Circuit observed that "settlement class actions present unique due process concerns for absent class

23  members" because the "inherent risk is that class counsel may collude with the defendants, tacitly

24  reducing the overall settlement in return for a higher attorney's fee."  *See In re Bluetooth Headset*

25  *Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks, citations omitted).

26  Thus, the Court must consider whether the process by which the parties arrived at their settlement is

27  truly the product of arm's length bargaining—as Plaintiff asserts (Doc. 47-1 at 15)— or the product of

28  collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

In particular, when a class action settlement agreement is reached prior to a class being certified, district courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 94; *see also Briseño*, 998 F.3d at 1023. These "more subtle signs" include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds" and "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal quotations, citations omitted).

### 1. Whether there is a disproportionate distribution to counsel

The Settlement provides that Class counsel may request attorneys' fees up to $ 200,000, which is one third of the gross settlement fund. (Doc. 47-3 at 9, Settlement § III.B.2.) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Because the fees requested are within the range awarded by the Ninth Circuit from the gross settlement fund, the Court finds the Settlement Agreement does not provide a disproportionate distribution to Class Counsel. *See Millan v. Casvade Water Servs.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015) (finding no disproportionate distribution where class counsel was to receive a third of the settlement fund "although significantly above the benchmark for this Circuit," because it was "not unreasonable as an upper bound" of fees awarded in the Circuit).

### 2. Existence of a "clear sailing" agreement

In general, a "clear sailing" provision is one in which the parties agree to the "payment of attorneys' fees separate and apart from class funds." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947. However, the Ninth Circuit recognized also a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Lane*, 696 F.3d at 832; *In re Bluetooth Headset Prods.*, 654 F.3d at 947.

16

Defendant agreed the company "will not oppose Class Counsel's application to the Court for an award of not more than 33 1/3% of the Goss Settlement Amount as their Class Counsel Fees Payment, plus an additional mount for reasonable costs." (Doc. 47-3 at 9, Settlement § III.B.2.)  Thus, the Settlement includes a version of a "clear sailing agreement." Nevertheless, the existence of a clear sailing provision is not necessarily fatal to approval.  *See In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d at 948; *see also In re Toys R Us–Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling").  Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id*. (citing *Staton*, 327 F.3d at 954).

No evidence is currently before the Court to evaluate the reasonableness of the fees requested or the tasks undertaken on behalf of the Settlement Class.  However, the Court will determine at the final approval stage whether the fees are reasonable, based upon evidence submitted by counsel. Thus, this factor does not weigh against preliminary approval of the settlement and will be revisited upon the filing of a motion for attorneys' fees and final approval of the terms.  *See Singh v. Roadrunner Intermodal Servs. LLC*, 2019 WL 316814 at *7-8 (E.D. Cal. Jan 24, 2019) (not finding collusion between the parties, despite a clear sailing agreement, where the fee award was analyzed and determined to be reasonable).

### 3.    Whether there is a reversion to Defendant

Finally, the parties did not arrange for any unawarded fees to revert to Defendant.  Instead, the parties acknowledge in the Settlement Agreement that the Court may approve less than the requested amount of fees, in which case the Net Settlement Amount will be adjusted.  (Doc. 47-3 at 9, Settlement § III.B.2)  Because unawarded fees will be retained in the Net Settlement Amount for distribution to participating class members, this factor does not support a finding of collusion between the parties.

### 4.    Findings on collusion

Based upon the factors set forth by the Ninth Circuit, the Court finds the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations." *See In re Tableware*

1   *Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).  Thus, this factor under Rule 23

2   supports preliminary approval of the class settlement.

3       **C.    Relief Provided to the Class**

4       The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of

5   absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688

6   F.2d 615, 624 (9th Cir. 1982) (citation omitted).  When analyzing an agreement, the Court should

7   examine "the complete package taken as a whole," and the proposed settlement is "not to be judged

8   against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."

9   *Officers for Justice*, 688 F.2d at 625, 628.

10       The proposed gross settlement amount is $600,000.00.  (Doc. 45-3 at 4, Settlement § I.S.)

11   After the anticipated deductions from the gross settlement, Plaintiff estimates that $336,500 will be

12   dispersed to Participating Class Members.  (Doc. 47-1 at 10.)  Plaintiff believes the average net

13   recovery for each Class Member is $2,157.  (*Id.*)  Analyzing the factors identified in Rule 23, as

14   discussed below, the Court finds the amount offered and relief provided to the Settlement Class

15   supports preliminary approval of the Settlement.

16           1.    Costs, risks, and delays

17       "A[] central concern [when evaluating a proposed class action settlement] … relate[s] to the

18   cost and risk involved in pursuing a litigated outcome." *Feltzs v. Cox Comm's Cal., LLC*, 2022 WL

19   2079144 at *9 (C.D. Cal. Mar. 2, 2022) quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee

20   Notes [modifications in original].)  Approval of settlement is "preferable to lengthy and expensive

21   litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

22   529 (C.D. Cal. 2004).  If the settlement were to be rejected, the parties would have to engage in further

23   litigation, including seeking class certification and discovery on the issue of damages.

24       The parties agree the claims are "highly disputed."  (Doc. 47-3 at 7, Settlement § II.F.)

25   Defendant indicates it "has taken into account the uncertainty and risks inherent in any litigation and

26   has also concluded that further defense of the Lawsuit would be protracted and expensive."  (*Id.*)

27   Similarly, Plaintiff reports counsel "carefully considered the risks of trial and other normal perils of

28   litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of

18

complex litigation, the lengthy process of establishing specific damages, new legal decisions affecting pivotal issues in the case[7], and other various possible risks and delays." (Doc. 47-1 at 7, citing Mallison Decl. ¶¶ 32-37 [Doc. 47-2 at 13-15].)  Plaintiff acknowledges that even if he prevailed upon the "wage and break violation claims," there are "legal obstacles in obtaining other damages and penalties derivative thereof." (*Id.* at 15.)  For example, Plaintiff observes:

> [T]he possibility existed that the Court would decline to enter a finding of "willfulness" with regard to Defendant's untimely payment of wages to severed employees, thus foreclosing on any recovery under Labor Code section 203. Similarly, the Court may have declined to find that there was any "injury" to Class Members resulting from allegedly inaccurate wage statements. *See* Cal. Lab. Code § 226(e)(1).

(Doc. 47-1 at 15.)  Further, Plaintiff contends the Settlement "provides a certainty of recovery," while "further litigation or trial of the matter would substantially delay any compensation to Class Members and/or potentially imperil the financial stability of Defendants, and their ability to provide any remedies in this action." (*Id.* at 7.)

Employment law class actions are, by their nature, time-consuming and expensive to litigate. *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959 at *6 (C.D. Cal. Aug. 4, 2015). If the Settlement is rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages.  The time and expense of continued litigation could outweigh any additional recovery.  On the other hand, the proposed settlement provides for immediate recovery on claims presented by Plaintiff on behalf of the class.  Due to the acknowledged risk of the claims of class members, costs of future litigation that may reduce the recovery to class members, and delay in payments if the settlement is not approved, this factor weighs in favor of preliminary approval of the Settlement.  *See Rodriguez*, 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

---

[7] Counsel acknowledges that "Plaintiff's meal break claim might not readily support awards of wage statement and waiting time violations," and resolution of the issue is expected with the California Supreme Court's pending review in *Naranjo v. Spectrum Security Services, Inc.*, 40 Cal. App. 5th 444 (2019), *review granted*, 257 Cal. Rptr. 3d 188 (Jan. 2, 2020).  (Doc. 47-2 at 13, Mallison Decl. ¶ 33.)

1        2.     Proposed distribution

2      "[T]he goal of any distribution method is to get as much of the available damages remedy to

3 class members as possible and in as simple and expedient a manner as possible." *Hilsley v. Ocean*

4 *Spray Cranberries, Inc.*, 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval

5 criteria—Rule 23(e)(2)(C)(ii): Distribution method," 4 NEWBERG ON CLASS ACTIONS § 13:53

6 (5th ed.)). "Often it will be important for the court to scrutinize the method of claims processing to

7 ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee

8 Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be

9 alert to whether the claims process is unduly demanding." *Id.*

10      Class members are not required to "take any action," such as submitting a claim form, to

11 receive their settlement share.  (*See* Doc. 47-4 at 5.)  Rather, class members need only take specific

12 action if they wish to opt-out of the settlement, object to any of the terms of the settlement, or dispute

13 the amount of their individual settlement share.  Because the class members are not required to submit

14 and claim form, the proposed method of distribution will facilitate payment for legitimate claims and

15 is not "unduly demanding" upon Settlement Class members.  Thus, this factor weighs in favor of

16 preliminary approval of the settlement. *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at *11 (E.D.

17 Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in

18 favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class

19 members did not have to file a claim).

20        3.     Attorneys' fees

21      Under Rule 23, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'"

22 *McKinney-Drobnis v. Oreshack*, 16 F.14th 594, 607 (9th Cir. 2021) (quoting Fed. R. Civ. P.

23 23(e)(2)(C)(iii). The Ninth Circuit explained, "the new Rule 23(e) makes clear that courts must balance

24 the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining

25 whether the settlement is 'adequate' for class members." *Id.*, quoting *Briseño*, 998 F.3d at 1024.

26      As discussed above, Class Counsel may request fees in the amount of one third of the

27 settlement fund.  (Doc. 47-3 at 9, Settlement § III.B.2.)  The Court-approved payment shall be made

28 by the Settlement Administrator "out of the Gross Settlement Amount promptly upon receipt."  (*Id.*)

Notably, the Settlement Administrator shall pay approved payments to Class Members within 15 business days of the Effective Date.  (*Id.* at 11, Settlement § III.D.)  Although it appears counsel will receive payment prior to the Class Members, the gap between payments does not appear so significant as to weigh against preliminary approval of the Class Settlement.

The fees to which the parties have agreed fall within the range of acceptable attorneys' fees in the Ninth Circuit. *See Powers*, 229 F.3d at 1256.  Importantly, however, any party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000).  Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007).  Because the identified percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily.  The Court will evaluate the reasonableness of the fee request and the exact amount of the fee award upon application by Class Counsel with final approval of the settlement.

### 4.   Agreement required to be identified

The Court must consider any agreement that is required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The parties have identified no such agreement and the Court is not aware of any such agreement.  Thus, this factor does not weigh against preliminary approval.

### D.   Treatment of Class Members

Rule 23 requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." *Hilsley*, 2020 WL 520616 at *7 (citation omitted).

The parties agreed that class members who do not timely opt-out of the Settlement will receive a *pro rata* share of the Net Settlement Amount, "calculated by dividing the Net Settlement Amount by

the total number of workweeks worked by each class member during the Class Period." (Doc. 47-3 at

11, Settlement § III.D.1.) The Class Member Payment will also include any "Aggrieved Employee"

payment under Cal. Lab. Code § 2699(c). *Id.* Thus, the agreement treats the Class Members equitably,

and the proposed distribution plan supports preliminary approval. *See Cooks v. TNG GP*, 2021 WL

5139613 at *4 (E.D. Cal. Nov. 4, 2021) (observing that the calculation of payments to class members

"on a pro-rata basis based on the number of compensable workweeks each member worked … is fair

and treats class members equitably"); *see also Gomez-Gasca v. Future AG Mgmt. Inc.*, 2020 WL

6149688 at *4 (N.D. Cal. Oct. 20, 2020) (noting that in the preliminary approval stage, "the Court

approved the proposed plan pro rata allocation based on the number of workweeks the class member

performed work during the Class Period"); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898

at *5 (S.D. Cal. Oct. 29, 2020) (finding a *pro rata* distribution plan was equitable and weighed in favor

of approving the settlement terms).

### E.    Class Representative Service Payment

Incentive awards, service payments, for class representatives are not to be given routinely by

the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special
> awards in addition to their share of the recovery, they may be tempted
> to accept suboptimal settlements at the expense of the class members
> whose interests they are appointed to guard." *Weseley v. Spear, Leeds
> & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's
> Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76
> F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs
> make what amounts to a separate peace with defendants, grave
> problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was

reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a

class representative, a court should consider all "relevant factors including the actions the plaintiff has

taken to protect the interests of the class, the degree to which the class has benefitted from those

actions, … the amount of time and effort the plaintiff expended in pursuing the litigation … and

reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

Pursuant to the agreement of the parties, Plaintiff may seek a "Class Representative Payment of

up to $10,000." (Doc. 47-3 at 9, Settlement § III.B.1.) The Settlement explains the enhancement is to

1  be given to Plaintiff "to compensate him for initiating the Lawsuit, performing work in support of the

2  Lawsuit, undertaking the risk of liability for attorneys' fees and expenses in the event he was

3  unsuccessful in the prosecution of the Lawsuit." (*Id.* at 3, § I.K.)  Significantly, however, Plaintiff did

4  not submit a declaration in support of the motion addressing the tasks undertaken *on behalf of the class*

5  in this action.  There is no evidence related to the work performed by Plaintiff—such as whether he

6  attended meetings with counsel or attended the mediation—or the actual number of hours Plaintiff

7  spent working with Class Counsel.  Without additional information the Court is unable to evaluate the

8  reasonableness of this requested award at this time.  In seeking final approval, **Plaintiff must provide**

9  **evidence supporting the requested enhancement.**  Nevertheless, given the flexibility for an award

10  *up to* $10,000, the request for approval of a class representative enhancement is preliminarily

11  approved.[8]

12          F.      **Views of Counsel**

13          As addressed above, Plaintiff's counsel are experienced in class action litigation.  Mr. Mallison

14  indicates a belief that "the Amended Settlement is fair, adequate, and reasonable, as it provides

15  substantial compensation to employees who worked for Defendant."  (Doc. 47-2 at 11, Mallison Decl.

16  ¶ 22.)  The Settlement also provides: "The Parties and their respective counsel believe and warrant that

17  this Settlement Agreement reflects a fair, reasonable, and adequate settlement of the Lawsuit."  (Doc.

18  47-3 at 22, § III.I.7.)  These opinions of counsel are entitled to significant weight and support approval

19  of the Settlement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the

20  recommendation of counsel, who are most closely acquainted with the facts of the underlying

21  litigation"); *Barbosa v. Cargill Meat Solutions Corp*., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("the trial

22  court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

23  _____

24  [8] A class representative enhancement of $10,000 appears to be excessive. *See, e.g., Monterrubio v. Best Buy Stores, L.P*.,
   291 F.R.D. 443, 463 (E.D. Cal. 2013) (indicating the Court's intent to reduce the requested enhancement from $7,500 to

25  $2,500 upon final approval, where the class representative was deposed, assisted with preparation for mediation, and
   traveled out of town for the mediation); *Valentine v. Rehab. Ctr. of Santa Monica Holding Co. GP, LLC*,  2021 U.S. Dist.
   LEXIS 243660, at *13-14 (C.D. Cal. Dec. 20, 2021) (finding the class representative failed to justify an enhancement of

26  $10,000, though the plaintiff reported 59.5 hours of work during which she "was deposed, worked closely with [class]
   counsel, assisted in the preparation of pleadings, provided factual information and assisted in identifying potential

27  witnesses"). This Court indicated "substantial effort" by a plaintiff is necessary to support the enhancement of $10,000.
   *Coburn v. City of Sacramento*, 2020 WL 7425345, at *8 (E.D. Cal. Dec. 17, 2020); *see also Amaro v. Gerawan Farming

28  Inc.*, 2020 WL 6043936, at *10 (E.D. Cal. Oct. 12, 2020) (awarding a payment of $10,000 to plaintiffs who spent over 370
   hours each during the course of the litigation on tasks such as "talking to co-workers, assisting class counsel, attending the
   mediation, and organizing class members to keep them apprised of the status of [the] case").

G.      Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of Settlement Agreement.  (*See* Doc. 47-3 at 24.)  However, because Class Members have not yet received notice, this factor shall be revisited for final approval of the Settlement.  *See Cottle*, 340 F.R.D. at 376 ("The reaction of the class members is best assessed at the final approval hearing since the court can look at how many class members submitted … objections").

## APPROVAL OF PAGA SETTLEMENT

California adopted its Private Attorney General Act to allow individual plaintiffs "to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); *see also* Cal. Lab. Code § 2699(a); *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013). Thus, a PAGA plaintiff now acts "as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

Pursuant to PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a). PAGA defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." *Id*.  A judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Arias*, 46 Cal. 4th at 986.

To bring an action under PAGA, an aggrieved employee must first provide written notice to the employer and the Labor and Work Force Development Agency.  Cal. Lab. Code § 2699.3(a)(1). Recovery under PAGA is limited to civil penalties, and the civil penalties must be allocated with 75% directed to the LWDA and 25% to aggrieved employees.  *Id.* § 2699(i).  Any proposed settlement of PAGA claims must be submitted to the LWDA, and a trial court must "review and approve" any settlement of PAGA claims. *Id.* § 2699(l)(2); *see also Haralson v. U.S. Aviation Servs. Corp*., 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (because settling a PAGA claim "compromises a claim that could otherwise be brought be the state," it requires that a court "review and approve any settlement of any

24

1   civil action pursuant to [PAGA]") (citation omitted).

2          Although there is no binding authority establishing the standard of review for PAGA

3   settlements, California district courts "have applied a Rule 23-like standard, asking whether the

4   settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's

5   policies and purposes.'" *Haralson*, 383 F. Supp. 3d at 972. This standard is derived principally from

6   the LWDA itself. *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016).

7   The LWDA indicated:

8              It is thus important that when a PAGA claim is settled, the relief provided
              for under the PAGA be genuine and meaningful, consistent with the
9              underlying purpose of the statute to benefit the public and, in the context
              of a class action, the court evaluate whether the settlement meets the
10             standards of being "fundamentally fair, reasonable, and adequate" with
              reference to the public policies underlying the PAGA.

11

12  *Id.* (citation omitted). When a proposed settlement involves overlapping class action and PAGA

13  claims, courts may employ a "sliding scale" in determining if the proposed settlement is

14  "fundamentally fair, reasonable, and adequate with reference to the public policies underlying the

15  PAGA." *O'Connor*, 201 F. Supp. 3d at 1134; *see also Haralson*, 383 F. Supp. 3d at 972 (following

16  *O'Connor*); *Cooks v. TNG GP*, 2020 WL 5535397 at *9-10 (E.D. Cal. Sept. 15, 2020) (same).

17  "[W]here the settlement for the rule 23 class is robust, the purposes of PAGA may be concurrently

18  fulfilled." *Cooks*, 2020 WL 5535397 at *10 (quoting *O'Connor*, 201 F. Supp. 3d at 1134).

19         Stan Mallison reports that "Plaintiff submitted the initial Settlement Agreement to the LWDA

20  on March 2, 2022."[9]  (Doc. 47-2 at 15, Mallison Decl. ¶ 38.)  The settlement fund of $600,000.00

21  appears sufficiently robust—with more than $330,000 going to the class members—such that the

22  Court finds the purposes of PAGA to address the alleged labor violations are fulfilled by the proposed

23

24  [9] The parties agreed that "a copy of the proposed settlement will be provided to the LWDA at the same time it is submitted
    to the Court." (Doc. 47-3 at 10, Settlement § III.B.3.)  However, there is no evidence the revised settlement agreement was
25  submitted to the LWDA.  Although the purpose of the parties' amendment was to refer to class certification under Rule 23
    rather than state law— and the proposed payments remain same— it appears the revised agreement should be submitted
26  to the LWDA.  *See Mondrian v. Trius Trucking, Inc.*, 2022 WL 2306963, at *13 (E.D. Cal. June 27, 2022) (observing the
    parties submitted their original agreement to the LWDA, and following revision, indicated the revised Settlement
27  Agreement would be served on the LWDA at the same time as briefing to the Court); *see also Orosco v. Teva Parenteral
    Meds*, 2021 Cal. Super. LEXIS 148227 at *3 (Cal. Sup. Ct. Dec. 16, 2021) (directing the plaintiff to serve the LWDA with
28  any revisions to the class settlement made following the court's order).  Accordingly, Plaintiff **SHALL** submit the
    "Amended Settlement Agreement and Release" to the LWDA.

agreement.  Under the Settlement Agreement, $50,000 of the Gross Settlement Amount is designated as the PAGA payment.  (Doc. 47-3 at 10, Settlement § III.B.3.)  The Settlement properly designates 75% of the PAGA funds to the LWDA—in the amount of $37,500 from the Gross Settlement Amount—and the remaining $12,500 to the aggrieved employees.  (*Id.*)  Accordingly, the Court finds approval of the PAGA payment is also appropriate.  *See Jamil v. Workforce Resources*, 2020 WL 6544660 at *6 (S.D. Cal. Nov. 5, 2020) (finding a $10,000 PAGA award to be fair and adequate as part of a class settlement).

## **APPOINTMENT OF SETTLEMENT ADMINISTRATOR**

The parties agreed upon and propose that the Court appoint Simpluris, Inc., to serve as the Settlement Administrator.  (Doc. 47-3 at 6, Settlement § I.EE.)  Under the terms of the agreement, the duties of the Settlement Administrator will be responsible for "printing, distributing, and tracking forms for this Settlement, calculating estimated amounts per Class Member, tax reporting, distributing all payments from the Gross Settlement Amount (including conducting skip trace address searches, as necessary), and providing necessary reports and declarations."  (*Id.* at 11, Settlement § III.B.4; *see also id.* at 15- 20.)  In anticipation of the administration expenses, $5,000 from the settlement fund was designated for the Settlement Administrator.  (*Id.* at 11, Settlement § III.B.4.)  Based upon the recommendation and request of the parties, Simpluris is appointed as the Settlement Administrator.

## **APPROVAL OF CLASS NOTICE**

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

# I.      Content of the Notice

Plaintiff submitted the proposed Notice and the "Election to Not Participation in Settlement" form (collectively, the "Notice Packet").  (Doc. 47-4 at 2-16.)  The Notice provides information regarding the background of the action and claims asserted by Plaintiff that resolved as a result of settlement, and defines the class.  (*Id.* at 2.)  The Notice also explains the terms and provisions of the Settlement, including the claims released by participating class members and the binding effect of judgment.  (*Id.* at 2-6.)

The Notice Packet will include an estimate of the Class Member's share based upon the number of workweeks employed by Defendant during the relevant period, and informs class members how to challenge any information used to calculate the payment. (Doc. 47-4 at 4-5.)  Further, the Notice informs class members of the payments to be made from the Gross Settlement Amount— including the maximum attorneys' fees of $200,000 and class representative payment of $10,000—and that the payments from the Gross Settlement Amount are subject to Court approval.  (*Id.* at 3.)  The Notice explains the rights and procedures to object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines. (*Id.* at 5-6.)  Finally, the Notice informs class members: "You also have the right to retain an attorney, at your own expense, to speak on your behalf."  (*Id.* at 6.) Thus, the proposed Notice Packet, the Court finds the content is adequate and satisfies the requirements of Rule 23(c)(2)(b).

# II.      Method and Administration of Notice Packet

Within 15 days of the date of service of this Order, Defendant "shall provide the Settlement Administrator with (i) the names, (ii) most recent known mailing address, (iii) most recent known telephone number, (iv) Social Security Number and (v) the respective number of workweeks that each Class Member worked for Semi-Tropic in a Covered Position during the Settlement Class Period." (Doc. 47-3 at 16, Settlement § III.E.2.e.)  This Class list and data shall be provided "in a readable Microsoft Office Excel spreadsheet."  (*Id.*)

Within 10 days of receiving this data, the Settlement Administrator will mail the Notice Packet to all Class Members.  (Doc. 47-3 at 17, Settlement § III.E.2.g.)  However, "[p]rior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database or

1   any other similar services available, such as provided by Experian, to update and correct for any known

2   or identifiable address change." (*Id.*, § III.E.2.f.)  For any Notice Packet returned due to an incorrect

3   address, "the Settlement Administrator will perform a computer/SSN and 'skiptrace' search" for a

4   current address, and re-mail the packet.  (*Id.*)  If a current address is not located, "the Class Notice for

5   that individual will be deemed undeliverable."  (*Id.*)

6         Class Members who elect not to participate in the Settlement will have 45 days from date the

7   Notice is mailed to submit the "Election Not to Participate in Settlement" form to the Settlement

8   Administrator.  (Doc. 47-3 at 15, Settlement § III.E.2.c; *see also* Doc. 47-4 at 8.)  Individuals who

9   properly complete the "Election Not to Participate in the Settlement" will not be entitled to a settlement

10  share; will not be bound by the terms of the settlement agreement; and will not have the right to object,

11  appeal, or comment upon the terms.[10]  (*See id.* at 19, § III.E.3; *see also* Doc. 47-4 at 8.)

12        Similarly, Class Members who wish to object to the Settlement have 45 days to submit a written

13  objection to the Settlement Administrator. (Doc. 47-3 at 16, Settlement § III.E.2.d.)  Any objection

14  must include:

15              (i) the objecting person's full name, address, and telephone number;
             (ii) the words "Notice of Objection" or "Formal Objection"; (iii)[] in
16           clear and concise terms, the legal and factual arguments supporting the
             objection; (iv) list of identifying witness(es) the objector may call to
17           testify at the Final Approval hearing and (v) provide true and correct
             copies of any exhibit(s) the objector intends to offer at the Final
18           Approval hearing.

19  (*Id.*)  Class Members who fail to comply with these requirements "shall be deemed to have waived any

20  and all objections."  (*Id.*)  In addition, Class Members will not be permitted to make objections at the

21  Final Approval and Fairness Hearing unless they have submitted a timely written objection that

22  includes notice of intention to appear.  (*Id.*)

23        Prior to the hearing for final approval, the Settlement Administrator shall serve the parties with

24  a declaration due diligence, setting forth its compliance with its obligations under the Agreement.

25  (Doc. 47-3 at 19, Settlement § 5, ¶ 43)  The declaration shall include the number of Class Members to

26

27  [10] If an individual submits a deficient "Election Not to Participate," the Settlement Administrator will return the form to the
    Class Member within seven days, "explaining the deficiencies and stating that the Class Member will have ten (10) business
28  days from the date of the [deficient] notice to correct the deficiency and resubmit the form." (Doc. 47-3 at 15, Settlement §
    III.E.2.c.i.)  However, the period for curing a deficient form does not extend the original 45-day deadline.  (*Id.*)

whom Notice Packets were sent and the number of Class Members to whom the Notice Packets were delivered.  Further, this declaration shall be filed with the Court with the motion for final approval of the Settlement.  (*Id.*)

### III.     Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including deadlines for requesting exclusion, any objections to the Settlement, and disputes of the employment information for the class member.  The Notice Packet also must be updated with contact information for Simpluris as the Settlement Administrator.  In addition, Plaintiff should correct the case number for this action (which is now Case No. 1:19-cv-1581-JLT-CDB) in the Notice Packet, to prevent any confusion if class members elect to file objections or elect to not participate.  (*See, e.g.,* Doc. 47-4 at 2, 8.)

If Plaintiff intends to issue a Spanish language translation of the Notice, as was provided in support of the motion, he is informed the Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

### CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth under Rule 23 and Ninth Circuit precedent weigh in favor of preliminary approval of the settlement agreement. Accordingly, the Court **ORDERS**:

1.     Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

> Any individual who worked for Semi-Tropic in the State of California as an hourly paid, non-exempt employee at any time between November 5, 2015 and June 3, 2021.

2.     Preliminary approval of the parties' proposed settlement agreement is **GRANTED**.

3.     Preliminary approval of the parties' PAGA payment is **GRANTED**.

4.     Plaintiff **SHALL** serve the "Amended Settlement Agreement and Release" to the LWDA within seven days of the date of service of this Order.

5.     Plaintiff **SHALL** address whether the LWDA commented on either the initial settlement or amended settlement in the motion for final approval.

6.      The proposed notice plan and deadlines are **APPROVED**.

7.      Fabian Caballero Martinez is **APPOINTED** the Class Representative for the Settlement Class.

8.      The firm of Mallison & Martinez is **APPOINTED** as Class Counsel.

9.      Simpluris, Inc. is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement.

10.     The Class Representative incentive award for Plaintiff is **GRANTED** preliminarily up to the amount of $10,000, subject to a petition and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

11.     Class Counsel's request for fees not to exceed 33 1/3% of the gross settlement amount and identified costs is **GRANTED** preliminarily, subject to review of counsel's petition for fees and costs at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

12.     The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **January 18, 2023**.

13.     Costs of settlement administration shall not exceed $5,000.

14.     The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice with the required revisions for the Court's approval within seven days of the date of service of this Order.

15.     Defendants **SHALL** provide the Settlement Administrator with the Class List and Data no later than **November 2, 2022**.

16.     The Settlement Administrator **SHALL** mail the approved Class Notice Packet no later than **November 14, 2022**.

17.     A Class Member who wishes to be excluded from settlement shall postmark the "Election Not to Participate in the Settlement" no later than **December 27, 2022**.

18.   Any objections to or comments on the Settlement Agreement must be submitted to the Settlement Administrator no later than **November 2, 2022**.

19.   A Final Approval and Fairness Hearing is SET for **February 15, 2023**, at 9:00 a.m. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members.  The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees.

20.   Class Members may appear at the hearing on **February 15, 2023**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

21.   The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **January 18, 2023**.

22.   The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members.

23.   The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **October 18, 2022**

UNITED STATES DISTRICT JUDGE